FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2016 JUL 26 PM 1:03

STEPHAN HARRIS, CLERK
CHEYENNE

Diana Rhodes, #5-2734
Traci Rivinus, #6-3920
Rhodes Law Firm, LLC
2015 Warren Avenue
Cheyenne, WY 82001
Telephone: 307.634.4444
Facsimile: 307.220-0280
diana@drhodeslaw.com
traci@drhodeslaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **DIANNA BRATBERG, as the Personal Representative of the Estate of Vivian R. Olson,** | ) ) ) |
| **Plaintiff,** | ) |
| **vs.** | ) Civil Action No.: 16-CV-212-R |
| | ) |
| **KINDRED NURSING CENTERS WEST, LLC, a Foreign Corporation, d/b/a/ KINDRED TRANSITIONAL CARE AND REHABILITATION- CHEYENNE; KINDRED REHAB SERVICES, INC., a Foreign Corporation; KINDRED HEALTHCARE OPERATING, INC., a Foreign Corporation;** | ) ) ) ) ) ) ) ) |
| **Defendants.** | ) |

## COMPLAINT AND JURY DEMAND

Plaintiff, Dianna Bratberg, as the appointed Personal Representative of the Estate of Vivian R. Olson, deceased, by and through counsel, Diana Rhodes, Rhodes Law Firm, LLC, for claims for relief as a survival action against the Defendants, states and alleges upon information and belief as follows:

1. At all times relevant to the facts alleged in this Complaint, decedent Vivian R. Olson was a resident of Laramie County, Cheyenne, Wyoming.

2.  Vivian R. Olson was a resident of Kindred Transitional Care and Rehabilitation-Cheyenne [hereinafter "KTCR"] , and suffered injuries while a resident of KTCR.

3.  Dianna Bratberg is the appointed Personal Representative of the Estate of Vivian R. Olson, deceased, pursuant to an Order of the First Judicial District Court, Laramie County, Wyoming under probate number 47-586, and Letters of Administration issued therein, attached as **Exhibits 1 and 2**. Ms. Bratberg brings this negligence action in her official capacity on behalf of all participating beneficiaries of Vivian R. Olson, deceased, pursuant to Wyo. Stat. Ann § 1-4-101. The decedent was, and her probate estate and the Personal Representative of her probate estate are, Wyoming citizens.

4.  Plaintiff is informed and believes and thereon alleges, that defendant KINDRED NURSING CENTERS WEST, LLC (hereinafter referred to as "Kindred West") is a limited liability corporation formed and existing under the laws of the State of Delaware, with its principal place of business in the State of Kentucky, and licensed to do business in the State of Wyoming. That upon information and belief Kindred West was engaged in, among other things, owning, operating, and managing nursing homes and rehabilitation centers, including but not limited to, Kindred Transitional Care and Rehabilitation-Cheyenne, located at 3128 Boxelder Dr, Cheyenne, Wyoming 82001; was the licensed operator of Kindred Transitional Care and Rehabilitation-Cheyenne; and is a proper party defendant in this case.

5.  Plaintiffs are informed and believe, and thereon allege, that defendant KINDRED REHAB SERVICES, INC. (hereinafter referred to as "Kindred Rehab") is a corporation formed and

existing under the laws of the State of Delaware, with its principal place of business in the State of Kentucky, and licensed to do business in the State of Wyoming.

6. Defendant KINDRED HEALTHCARE OPERATING, INC. ("KHOI") is a corporation formed and existing under the laws of the State of Delaware, with its principal place of business located at 680 South Fourth Street Louisville, Kentucky 40202-2407. On information and belief, during the period at issue, KHOI regularly conducted business in the State of Wyoming and either directly or through its wholly-owned subsidiaries and/or affiliated companies, owned, leased, licensed, operated, administered, managed, directed, and/or controlled numerous skilled nursing facilities in Wyoming, including defendant Kindred Transitional Care and Rehabilitation-Cheyenne. KHOI is the sole equity member of Defendant Kindred Nursing Center West, LLC.

7. Defendant KINDRED TRANSITIONAL CARE AND REHABILITATION-CHEYENNE is a trade name of KINDRED NURSING CENTERS WEST, LLC; KINDRED HEALTHCARE OPERATING, INC., and KINDRED REHAB SERVICES, INC., each a foreign business, with the principal place of business for each in Kentucky.

8. At all relevant times Defendant KINDRED NURSING CENTERS WEST, LLC, KINDRED HEALTHCARE OPERATING, INC., and KINDRED REHAB SERVICES, INC., owned, operated or managed a nursing home facility in Cheyenne, Laramie County, Wyoming, under the business style of "Kindred Transitional Care and Rehabilitation-Cheyenne."

9. Plaintiff is informed and believes, and based thereon allege, that at all times herein mentioned, each of the Defendants was the agent, partner, joint venturer, aider and abetter, alter ego, and/or employee of each of the remaining defendants, and was acting within the course and

scope of such agency, partnership, joint venture, and/or employment or in the capacity of an aider and abetter or alter ego.

10. The events giving rise to this action occurred in Laramie County, Wyoming.

11. The amount in controversy in this action, exclusive of costs and interest, exceeds seventy-five thousand dollars ($75,000).

12. A Notice of Claim was properly executed to the Medical Review Panel of the State of Wyoming, pursuant to Wyo. Stat. § 9-2-1519. **Exhibit 3.**  Defendant Kindred Nursing Centers West, LLC, Kindred Healthcare Operating Inc., Kindred Rehab Services, Inc. and d/b/a Kindred Transitional Care and Rehabilitation-Cheyenne, filed a response answer with the Medical Review Panel, and the Order of Dismissal was entered by the Medical Review Panel on June 27, 2016, attached as **Exhibit 4.**  Pursuant to the Medical Review Panel Act, the Order of Dismissal provided Plaintiff with the availability of legal action, and this Court has jurisdiction.

13. Jurisdiction and venue are proper in this Court.

14. At all relevant times Plaintiff's decedent Vivian R. Olson was a resident of the Defendants' nursing home operated under the business style of "Kindred Transitional Care and Rehabilitation-Cheyenne."

15. At all times material to this action, Kindred Nursing Centers West, LLC, Kindred Healthcare Operating, Inc. and Kindred Rehab Services, Inc. were engaged in the business of for-profit custodial care of elderly and infirm nursing home residents and were the parent corporations and alter ego of Kindred Transitional Care and Rehabilitation-Cheyenne [hereinafter KTCR].  As a consequence, Kindred Nursing Centers West, LLC, Kindred Healthcare Operating, Inc., and

Kindred Rehab Services, Inc. are responsible for any liability and damages that flow from the misconduct of the other defendants as well as being directly liable for its own independent misconduct.  Kindred Nursing Centers West, LLC, Kindred Healthcare Operating, Inc., and Kindred Rehab Services, Inc., through its employees and officers, as well as its subsidiary corporations, controlled the operation, planning, management, and quality control of the nursing facility.

16. Kindred Nursing Centers West, LLC, Kindred Healthcare Operating, Inc., and Kindred Rehab Services, Inc., controlled the operation, planning, management, and quality control of the nursing home facility in which Vivian R. Olson was a resident.  This includes, but is not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedures used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies.

17. Kindred Healthcare Operating, Inc., as an agent of Defendants Kindred Nursing Centers West, LLC, and Kindred Rehab Services, Inc., controlled the operation, planning, management and quality control of the nursing home facility in which Vivian R. Olson was a resident.  This includes, but is not limited to, control of marketing, human resources management, training, staffing, creation and implementation of all policy and procedures used by the nursing home facility, federal and state Medicare and Medicaid reimbursement, quality care assessment and compliance, licensure and certification, legal services, and financial, tax, and accounting control through fiscal policies.

18. Defendants, by holding themselves out as providers and administrators of such skilled services to the public, were at all times relevant hereto responsible for providing high quality nursing, attendant care and rehabilitative services to their patients consistent with their health and safety requirement and needs for protection and with state and federal Medicare and Medicaid nursing home statutes and regulations, as well as the common law standards of due care for nursing, rehabilitative and attendant care.

19. Defendants are sued both directly and vicariously. They are sued on theories of principal-agent, respondent superior and vicarious liability for the actions and omissions of their employees and agents who were involved in the hereafter complained of series of negligently neglectful and careless incidents.

20. At all times relevant hereto aides, orderlies, nurses, attendants and other nursing home staff of Defendants who failed to provide or secure safe and appropriate nursing and other care including necessary protective care, supervision, monitoring, and working and properly placed or located warning systems and devices, health needs, safety, adequate risk assessments, evaluations, diagnoses and rehabilitative services and other treatments to Vivian R. Olson were acting within the scope and course of their employment and/or agency with these Defendants.

21. Defendants are also sued directly for their negligent supervision of staff, for inadequate and negligent staffing, for inadequate staff training with respect to the monitoring, supervision, hands-on or standby assistance, safety, and protection for vulnerable patients such as the decedent, and for their failure to develop, implement, modify or otherwise assure appropriate individual care plans, policies and procedures necessary for the health, care, dignity, protection and safety of

patients such as Vivian R. Olson, all of which actions and omissions have now resulted in the injuries of Vivian R. Olson as complained of herein.

22. The Defendants Kindred Nursing Centers West, LLC, Kindred Healthcare Operating, Inc., and Kindred Rehab Services, Inc., [hereinafter collectively referred to as "Defendants Kindred"], owed to Vivian R. Olson and the other residents a fiduciary duty to use their best efforts and to provide adequate resources to KTCR, so that Vivian R. Olson and the other residents could be adequately cared for.  Vivian R. Olson, like the other residents of Defendants Kindreds' KTCR, was frail and dependent upon KTCR to care for her needs.

23. Defendants Kindred owed to Plaintiff's decedent a nondelegable duty to provide reasonable and appropriate nursing and nursing home care.

24. During Vivian R. Olson's residency at the subject facility defendants Kindred Nursing Centers West, LLC, Kindred Healthcare Operating, Inc., and Kindred Rehab Services, Inc. each had a duty, under applicable federal and state laws (which were designed for the protection and benefit of residents such as Vivian R. Olson) to provide for, and to protect, Vivian R. Olson's health and welfare.  Defendants, and each of them, also had a common law duty to provide for the health and welfare of Vivian R. Olson.  Defendants had, among other duties, the duty with respect to Vivian R. Olson's health and welfare to:

    a.  Follow, implement, and adhere to all physician orders.

    b.  Protect Vivian R. Olson from sustaining injuries to her person;

    c.  Monitor and accurately record Vivian R. Olson's condition, and notify the attending physician and family member of any meaningful change in her condition;

d.  Note and properly react to emergent conditions, and timely transfer Vivian R. Olson to an acute care facility or otherwise appropriately act when the conditions so indicated;

e.  Establish and implement a patient care plan for Vivian R. Olson based upon, and including, an ongoing process of identifying her health care needs and making sure that such needs were timely met;

f.  Accurately monitor and provide for Vivian R. Olson's health, comfort, and safety;

g.  Maintain accurate records of Vivian R. Olson's health, comfort and safety;

h.  Properly and safely provide for Vivian R. Olson's nutritional and hydration requirements;

i.  Ensure that Vivian R. Olson received appropriate nutrition, liquids, supplements, and medicines required to maintain and improve her health;

j.  Provide Vivian R. Olson with appropriate medical and nursing care;

k.  Maintain trained, qualified, and licensed nursing and other staffing at levels adequate to meet Vivian R. Olson's needs;

l.  Provide sufficient supervision to Vivian R. Olson, a vulnerable resident, to ensure her safety, and;

m.  Treat Vivian R. Olson with dignity and respect, and without abuse.

25. The continuing pattern of misconduct engaged in by said defendants, and each of them, as alleged above, manifested itself in the following specific ways with respect to Vivian R. Olson by failing or refusing to timely and properly assess and document Vivian R. Olson, and by failing to

investigate and document Vivian R. Olson's injuries and medical declines, and by failing or refusing to notify Vivian R. Olson's attending physician, family members, and acute-care personnel of such injuries and conditions.

26. Plaintiff's injuries were proximately caused by the negligence and other misconduct of the Defendants Kindred, in the following particulars:

    a.    Failure to provide sufficient staff and personnel to attend to the reasonable needs of the residents of its nursing home operated under the business style of "Kindred Transitional Care and Rehabilitation-Cheyenne."

    b.    Failure to provide proper and appropriate training for personnel to attend to the reasonable needs of the residents of its nursing home operated under the business style of "Kindred Transitional Care and Rehabilitation-Cheyenne."

    c.    Failure to provide proper and appropriate supervision and monitoring of personnel who attend to the reasonable needs of the residents of its nursing home operated under the business style of "Kindred Transitional Care and Rehabilitation-Cheyenne."

    d.    Failure to maintain and protect the physical safety of its residents, including Plaintiffs' decedent.

    e.    Failure to follow physicians' orders.

    f.    Failure to progressively care plan where conditions change.

    g.    Failure to protect frail, vulnerable persons.

    h.    Failure to keep residents safe and free from avoidable accidents.

i.      Failure to properly and appropriately manage monies.

j.      Failure to timely respond to changing condition of a patient and failure to notify physician of change in condition of Plaintiff's decedent.

k.      Failure to supervise its management, including but not limited to, the Administrator and Director of Nursing.

29.      As a result of said defendants' continuing pattern of conduct, as alleged above, Vivian R. Olson suffered the following damages for which plaintiff is seeking compensation:

a.      Severe personal injuries, including, but not limited to, injuries from her fall, fractures of the right ankle, permanent limited mobility, severe pain, dehydration, as well as mental and emotional distress, all to her damage in a sum that will be proven at trial;

b.      Medical expenses, according to proof at trial, and

c.      General and special damages in an amount that will be proven at trial.

### STATEMENT OF FACTS

30. Plaintiff incorporates paragraphs 1 – 29 and makes the same a part hereof as if fully set forth herein.

31. On March 19, 2014, Vivian R. Olson became a resident of Defendants' Kindred Transitional Care and Rehabilitation-Cheyenne nursing home for the admission which continued through March 22, 2014; readmitted from the hospital on March 28, 2014 through April 14, 2014; and readmitted from hospital on April 17, 2014 through May 17, 2014.

32. At the time of her admission to KTCR on March 19, 2014, and subsequently thereafter, Vivian R. Olson was not assessed for her high risk for falls.

33. Plaintiff's decedent suffered a fall only three days after admission to KTCR, on March 22, 2014. This fall was caused by a series of negligent acts and omissions by Defendants. KTCR staff failed to adequately assess Ms. Olson after the fall, failing to assess a possible fracture of the ankle, causing her to walk multiple times after the fall, all of which compounded the harm resulting from the fall.

34. Plaintiff's decedent died on April 23, 2015. The Death Certificate lists Dementia as the causative contributing factor in her death.

35. At the time of her admission to KTCR on March 19, 2014, and subsequently thereafter, Vivian R. Olson was completely dependent on KTCR for 24-hour nursing care and close bedside supervision for care and treatment of a history of falls, hypertension, diabetes, osteoarthritis, venous insufficiency, depression, coronary artery disease, anxiety, hyperlipidemia, hypothyroidism, and edema.

36. At the time of her admission to KTCR on March 19, 2014, and subsequently thereafter, Vivian R. Olson was a vulnerable adult who relied on the staff employed by Defendants for assistance with basic activities of daily living.

37. According to the medical records, Plaintiff's decedent was at high risk for falls.

38. According to the medical records, Plaintiff's decedent was recognized as a falls risk by a physical therapist on admission to KTCR.

39. As a result of her fall, Plaintiff's decedent suffered injuries including but not limited to, multiple fractures to her ankle, and permanent loss of mobility.

40. Defendants failed to develop a care plan to address Ms. Olson's high fall risk.

41. According to the medical records, Defendants failed to adequately assess Ms. Olson for urinary tract infections while a resident at Defendants' facility.

42. Defendants failed to provide and follow a proper care plan.

43. Defendants failed to do proper nursing assessments.

44. Defendants failed to properly document assessments, care given, response to care given, and general nursing care documentation required for proper care.

45. According to the medical records, Defendants failed to notify the physician of Plaintiff's decedent's needs and changes in condition.

46. Defendants failed to perform a proper post-fall injury assessment following Ms. Olson's March 22, 2014 fall.

47. At all relevant times, Defendants Kindred held a fiduciary position of trust toward Plaintiff's decedent and toward her family, and owed to her the highest duties of good care, adequate staffing, proper physical protection, candor and truthfulness.

48. Defendants Kindred breached and violated its duties toward Plaintiff's decedent, and toward her family, and did so with knowledge and forethought and purpose, for the sake of enhancing its corporate profits and pecuniary gain and with the further objective of concealing its own wrongdoing.

49. The negligence, inattention, and misconduct of Defendants Kindred were committed as part of a pattern of wrongdoing on the part of the corporate Defendant.

50. The Plaintiff's decedent was injured and damaged as a result of the misconduct of Defendants Kindred.

51. At all relevant times, Defendant Kindred Healthcare Operating, Inc., and Defendant Kindred Nursing Centers West had a duty to properly manage the facility of Kindred Transitional Care and Rehabilitation-Cheyenne in all manners as it relates to the care and treatment of the frail, vulnerable population of residents assigned to their care.

52. Defendants Kindred Healthcare Operating, Inc. and Kindred Nursing Centers West breached and violated its duties toward Plaintiff's Decedent and toward her family, and did so with knowledge and forethought and purpose.

53. The negligence, inattention, and misconduct of Defendant Kindred Healthcare Operating, Inc. and Defendant Kindred Nursing Centers West were committed as part of a pattern of wrongdoing on the part of the management company.

54. The Plaintiff's decedent was injured and damaged as a result of the misconduct, fraud, and misrepresentation of Defendants Kindred Healthcare Operating, Inc. and Kindred Nursing Centers West.  Defendants Kindred's misconduct was negligent, grossly negligent, flagrant, willful, wanton, reckless and/or intentional, causing injuries and damages to Plaintiff's decedent.

### FIRST CAUSE OF ACTION
### (Negligence Against All Defendants)

55. Plaintiff incorporates paragraphs 1 – 54 and makes the same a part hereof as if fully set forth herein.

56. Dianna Bratberg, as Personal Representative of the Estate, brings this action against Defendants pursuant to the provisions of the W.S. §1-4-101.

57. Defendant KTCR, at all times pertinent hereto, was a nursing home licensed in the State of Wyoming.

58. Defendants Kindred, including Kindred Healthcare Operating, Inc. and Kindred Nursing Centers West, Inc., and Kindred Rehab Services, Inc, at all times pertinent hereto, were the owners and/or operators of KTCR.

59. Defendant Kindred Healthcare Operating, Inc. at all times pertinent hereto, had responsibilities for the management and operation of Kindred Transitional Care and Rehabilitation-Cheyenne.

60. Defendants held themselves out to be specialists in the field of nursing home care with the expertise to maintain the health and safety of persons unable to care for themselves, such as Vivian R. Olson.

61. As Vivian R. Olson was a paying resident of said nursing home, Defendant Kindred Nursing Centers West, Defendant Kindred Healthcare Operating, Inc., Defendant Kindred Rehab Services, Inc, and Defendant KTCR, by and through its employees, had contractual and other duties to provide competent nursing and other care to Vivian R. Olson as required by law and consistent with community standards.

62. Notwithstanding said duties, on March 22, 2014 Vivian R. Olson fell just three (3) days after her admission. Ms. Olson also suffered from dehydration, acute renal insufficiency, and repeated urinary tract infections during her residency at KTCR.

63. As a direct and proximate result of her falls, Vivian R. Olson suffered injuries, including but not limited to, three fractures of the right ankle, permanent loss of independent mobility, discomfort, isolation, depression, dehydration, acute renal insufficiency, and severe pain.

64. Defendants negligently failed to properly train its staff in caring for Vivian R. Olson and others like her who were unable to attend to their own health and safety and were confined to a nursing home.

65. Defendants negligently failed to hire competent staff to care for Vivian R. Olson and others like her confined to a nursing home.

66. Defendants knowingly and willfully documented material and false statements in the medical record pertaining to the assessments of Vivian R. Olson.

67. Defendants negligently failed to properly train its staff in keeping accurate nursing care and other treatment notes.

68. Defendants were further negligent and substandard in at least, but not limited to, the following particulars:

   a.  In failing to employ necessary and proper equipment and restraints;

   b.  In failing to progressively assess and care plan where conditions changed;

   c.  In failing to provide adequate staffing;

   d.  In failing to properly train staff regarding fall prevention;

   e.  In failing to provide proper supervision and monitoring of staff;

   f.  In failing to provide accurate and timely assessment;

   g.  In failing to provide quality of care;

h.  In failing to follow physician's orders;

i.  In repeatedly failing to maintain activities of daily living;

j.  In repeatedly failing to provide a sufficient number of qualified staff;

k.  In failing to prevent and treat urinary tract infection;

l.  In failing to provide care with dignity;

m.  In repeatedly failing to provide effective administration;

n.  In repeatedly failing to maintain medical records in accordance with professional standards.

o.  In failing to develop and implement an individualized plan of care for falls;

p.  In failing to address changes, improvements, and declines in condition and revise the interventions as appropriate based on Vivian R. Olson's response, outcomes and needs.

q.  In failing to notify a physician promptly of change in condition;

r.  In failing to protect frail, vulnerable persons;

s.  In failing to provide adequate and timely emergency care for Vivian R. Olson;

t.  In failing to keep residents safe or free from avoidable accidents;

u.  In failing to properly manage monies;

v.  In failing to supervise its management, including but not limited to, the Administrator and Director of Nursing.

69. The failures of the Defendant KTCR and/or Defendants Kindred Nursing Centers West, LLC, Kindred Healthcare Operating, Inc., and Kindred Rehab Services, Inc. to provide or obtain

proper and timely nursing, attendant and other care, supervision, evaluation, monitoring and safety precautions, were breaches of their duties of due care to decedent and a significant causative factor in Ms. Olson's avoidable injuries.

70. More specifically, but not limited to, during Vivian R. Olson's care, Kindred Healthcare Operating, Inc., Kindred Nursing Centers West, Inc., Kindred Rehab Services, Inc., and KTCR's nurses, staff, employees, and agents negligently monitored and failed to properly care for Vivian R. Olson despite her risk for falls.

71. At all times pertinent hereto, Vivian R. Olson was unable to care for herself and was under the exclusive control and care of Defendants.

72. Kindred Healthcare Operating, Inc., Kindred Nursing Centers West, Inc., Kindred Rehab Services, Inc., and KTCR breached and violated its duties toward Plaintiff's decedent and toward her family, and did so with knowledge and forethought and purpose, for the sake of enhancing its corporate profits and pecuniary gain.

73. Ms. Olson and her Estate have been injured and damaged as a result of the misconduct and negligence of Defendants Kindred's KTCR.

74. The direct actions and omissions of the Defendants and their agents and employees acting within the scope of their agency and employment, as set forth above, also constituted a negligent breach of their duties of due care owed to Ms. Olson to provide reasonably appropriate and high quality nursing, attendant, and other care, supervision and rehabilitative services necessary to meet her needs and assure her known safety needs for close supervision, monitoring, physical safety and protection.

75. As a direct and proximate result of the above-mentioned conduct, all of which was negligent and substandard, Plaintiff's decedent was damaged as previously described in this Complaint, and are entitled to damages as allowed under applicable Wyoming law.

## SECOND CAUSE OF ACTION
### (Negligence *Per Se* against all Defendants)

76. Plaintiff incorporates paragraphs 1 – 75 and makes the same a part hereof as if fully set forth herein.

77. Defendants, Kindred Healthcare Operating, Inc., Kindred Nursing Centers West, Inc, Kindred Rehab Services, Inc., and KTCR owed a non-delegable fiduciary duty to residents, including Vivian R. Olson, to provide adequate financial and other resources to care for their residents and to hire, train, and supervise employees so that such employees would deliver care and services to residents in a safe and beneficial manner in order to assist and ensure that the residents attain and maintain the highest practicable level of physical, mental, and psychosocial well-being. The Defendants breached this duty.

78. Defendants Kindred Healthcare Operating, Inc., Kindred Nursing Centers West, Inc,, Kindred Rehab Services, Inc., and KTCR, at all times relevant hereto failed to provide a sufficient number of trained, experienced and competent personnel; failed to provide appropriate care and supervision and safety for all patients and residents and failed to ensure that their needs were met and that they remained free of accidents, and failed to ensure dignity, all in violation of the regulations for licensing of long-term care health facilities of both the Health Care Financing

Administration, U.S. Department of Health and Human Services, 42 C.F.R. Part 483, and the Rules and Regulations for Licensure of Nursing Care Facilities of the Wyoming Department of Health, pursuant to the Health Facilities act at W.S. §35-2-901 *et seq.* and the Wyoming Administrative Procedures Act at W.S. §16-3-101 *et seq.*

79. Defendants failed to comply with the requirements of 42 C.F.R. §483.15:

**42 C.F.R. §483.15 Quality of life**

**§483.15(a)** – Dignity. The facility must promote care for residents in a manner and in an environment that maintains or enhances each resident's dignity and respect in full recognition of his or her individuality.

80. Defendants failed to comply with 42 C.F.R. § 483.30:

**§483.30 Nursing Services**

The facility must have sufficient nursing staff to provide nursing and related services to   attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident, as determined by resident assessments and individual plans of care.
The facility must provide services by sufficient numbers of each of the following types of personnel on a 24-hour basis to provide nursing care to all residents in accordance with resident care plans:
Except when waived under paragraph (c) of this section, licensed nurses and other nursing personnel,
Except when waived under paragraph (C) of this section, the facility must designate a licensed nurse to serve as a charge nurse on each tour of duty.

81. Defendants failed to comply with 42 C.F.R. §483.20:

**42. C.F.R. §483.20 Resident Assessment**

**§483.20** Resident Assessment The facility must conduct initially and periodically a comprehensive, accurate, standardized reproducible assessment of each resident's functional capacity.

**§483.20(b)** Comprehensive Assessments. A facility must make a comprehensive assessment of a resident's needs, using the RAI specified by the State. The assessment must include at least the following:

Identification and demographic information; customary routine; cognitive patterns; communication; vision; mood and behavior patterns; psychosocial well-being; physical functioning and structural problems; continence; disease diagnosis and health conditions; dental and nutritional status; skin conditions; activity pursuit; medications; special treatments and procedures; discharge potential; documentation of summary information regarding the additional assessment protocols; and documentation of participation in assessment.

**§483.20(g)** The assessment must accurately reflect the resident's status.

82. Defendants failed to comply with 42 C.F.R. §483.20(k):

**42 C.F.R. §483.20(k) Comprehensive Care Plans:**

**§483.20(k)(1)** Comprehensive Care Plans (1) The facility must develop a comprehensive care plan for each resident that includes measurable objectives and timetables to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment.

**§483.20(k)(3):** The services provided or arranged by the facility must-- (i) Meet professional standards of quality and; (ii) must be provided by qualified persons in accordance with each resident's written plan of care.

83. Defendants failed to comply with 42 C.F.R. §483.25(a)(3):

**42 C.F.R. §483.25(a) Activities of Daily Living**

**§483.25(a)** Activities of Daily Living. Based on the comprehensive assessment of a resident, the facility must ensure that §483.25(a)(1) A resident's abilities in activities of daily living do not diminish unless circumstances of the individual's clinical condition demonstrate that diminution was unavoidable.

84. Defendants failed to comply with 42 C.F.R. §483.25(h):

**42 C.F.R. §483.25(h)   Accidents**

**§483.25(h)** The facility must ensure that –

**42 C.F.R. §483.25(h)(1)**  The resident environment remains as free of accident hazards as is possible; and

**42 C.F.R. §483.25(h)(2)**  Each resident receives adequate supervision and assistance devices to prevent accidents.

85. Defendants failed to comply with 42 C.F.R. §483.75:

**42 C.F.R. §483.75 Administration**

**§483.75** Administration. A facility must be administered in a manner that enables it to use its resources effectively and efficiently to attain or maintain the highest practicable physical, mental, and psychosocial well-being of each resident.

86. Defendants failed to comply with 42 C.F.R. §483.75(b):

**42 C.F.R. §483.75(b) Compliance with Federal, State, and Local Laws and Professional Standards:**

**§483.75(b)**  The facility must operate and provide services in compliance with all applicable Federal, State, and local laws, regulations, and codes, and with accepted professional standards and principles that apply to professionals providing services in such a facility.

87. Defendants failed to comply with 42 C.F.R. §483.75 (l):

**42 C.F.R. §483.75(l) Clinical Records:**

**§483.75(l)** The facility must maintain clinical records on each resident in   accordance with accepted professional standards and practices.

88. As a direct and proximate result of said violations of regulations, Vivian R. Olson was exposed to risk of injury from abuse, mistreatment or neglect, and did in fact suffer such injury as a result thereof.

89. As a direct and proximate result of such negligence, gross negligence, flagrant, willful, wanton, reckless and/or intentional conduct, Vivian R. Olson suffered injuries that were foreseeable to Defendants.

90. Defendants' violation of the above stated regulations is negligence *per se.*

91. As a direct and proximate result of Defendants' negligence *per se,* Plaintiff is entitled to damages for medical expenses, together with all other damages allowed under applicable Wyoming law.

### THIRD CAUSE OF ACTION
### (Respondeat Superior)

92. Plaintiff incorporates paragraphs 1 – 91 and makes the same a part hereof as if fully set forth herein.

93. Based upon contract and agreement, apparent authority and agency, or law, the Defendants Kindred Healthcare Operating, Inc., Kindred Nursing Centers West, LLC, and Kindred Rehab Services, Inc., are legally or vicariously responsible for the actions of the nurses, staff, employees and agents of Kindred Transitional Care and Rehabilitation-Cheyenne.

94. Defendants Kindred are vicariously liable for any and all negligence of their nurses, staff, agents, and employees under the doctrine of *Respondeat Superior.*

95. Defendants Kindred were, therefore, negligent in the health care that they rendered to Vivian R. Olson.

96. As a result of the negligence of Defendants and their nurses, staff, agents, and employees, Plaintiff is entitled to damages for medical expenses, together with all other damages allowed applicable Wyoming law.

97. Plaintiff seeks recovery for damages caused by the negligence of the Defendants, their agents, servants, and employees, including but not limited to, pecuniary loss, pain and suffering of Vivian R. Olson, and reasonable medical expenses of Vivian R. Olson, and such other damages as are compensable under Wyoming law.

**WHEREFORE,** Plaintiffs requests that judgment be entered in their favor and against Defendant Kindred Healthcare Operating, Inc., Defendant Kindred Nursing Centers West, LLC, Defendant Kindred Rehab Services, Inc., and Defendant Kindred Transitional Care and Rehabilitation-Cheyenne for damages in such amount as the trier of fact determines to be just and proper; for exemplary damages for Defendants' said willful, wanton, reckless and/or intentional misconduct and to dissuade them and others similarly situated from engaging in similar misconduct in the future; for costs of this action; and for pre-judgment and post-judgment interest, costs, expert witness fees and such other and further relief as this Court deems just and proper in these circumstances.

DATED this 26th day of July, 2016.

DIANNA BRATBERG, appointed Personal Representative of the Estate of VIVIAN R. OLSON, Deceased.

Page 23 of 24

Diana Rhodes, Esq.  #5-2734
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, WY  82001
(307) 634-4444
diana@drhodeslaw.com

*Attorney for Plaintiff*

**STATE OF WYOMING**
**LARAMIE COUNTY**
**FIRST JUDICIAL DISTRICT COURT**

FILED

JUL 19 2016

DIANE SANCHEZ
CLERK OF THE DISTRICT COURT

IN THE MATTER OF THE ESTATE OF   )
VIVIAN R. OLSON                 )
                              )
                              )

Probate No. 47 - 586

---

## ORDER APPOINTING PERSONAL REPRESENTATIVE

---

Petition of Dianna Bratberg praying for Appointment as Personal Representative of the Estate of Vivian R. Olson, deceased, having come before the Court, and due proof having been made of the allegations herein and the law and the evidence fully considered;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that said Vivian R. Olson died on the 15th day of April, 2015, in Laramie County, Wyoming, and that decedent was a resident of Laramie County, Wyoming, and jurisdiction is proper before this Court.

IT IS FURTHER ORDERED that Letters of Administration of the Estate of Vivian R. Olson, deceased, be issued to Dianna Bratberg, Petitioner, upon her taking the oath;

IT IS FURTHER ORDERED that Dianna Bratberg is appointed as the Personal Representative for the purpose of bringing an action under Wyo. Stat. § 1-4-101.

DATED this 19th day of July 2016.

District Judge
Steven K. Sharpe

STATE OF WYOMING COUNTY OF LARAMIE, SS CHEYENNE

I Diane Sanchez, Clerk of the District Court in and for the County of Laramie, Wyoming, do hereby certify that the within and foregoing is a full true and correct copy of the original thereof as the same appears on file or of record in my office and that the same is in full force and effect as of this date.

Witness my hand and seal of said court this ___ day of ___

DIANE SANCHEZ
Clerk of the District Court

By ___
Deputy

EXHIBIT

1

PENGAD 800-631-6989

**STATE OF WYOMING**
**LARAMIE COUNTY**
**FIRST JUDICIAL DISTRICT COURT**

**F I L E D**

JUL 20 2016

DIANE SANCHEZ
CLERK OF THE DISTRICT COURT

IN THE MATTER OF THE ESTATE OF )
VIVIAN R. OLSON )          Probate No. 47-586
)

---

### LETTERS OF ADMINISTRATION

Pursuant to the Order of the Court, Dianna Bratberg is hereby appointed Personal Representative of the Estate of Vivian R. Olson, deceased.

WITNESS, Diane Sanchez, Clerk of the District Court, within and for the County of Laramie, with the seal thereto affixed, this _20_ day of _July_ 2016.

CLERK OF THE DISTRICT COURT

By: _Diane Sanchez_

_Brinch Joey_
Deputy Clerk District Court

EXHIBIT
2

## BEFORE THE MEDICAL REVIEW PANEL
## OF THE STATE OF WYOMING

| | |
|---|---|
| IN THE MATTER OF THE CLAIM OF | ) |
| VIVIAN OLSON, | ) |
|          **Plaintiff,** | ) |
| **vs.** | )     **DOCKET NO. MRP -___** |
| | ) |
| KINDRED HEALTHCARE, INC., KINDRED | ) |
| HEALTHCARE OPERATING, INC., | ) |
| KINDRED NURSING CENTERS WEST, LLC, | ) |
| d/b/a/ KINDRED TRANSITIONAL CARE | ) |
| AND REHABILITATION, | ) |
| | ) |
|         **Defendants.** | ) |

## CLAIM PRESENTATION TO THE
## WYOMING MEDICAL CLAIM REVIEW PANEL

To:    Medical Review Panel
c/o Eric Easton
Attorney General Office
800 Werner Court, Suite 190
PO Box 1507
Casper, WY  82602
Certified Mail Return Receipt Requested and
Email

From:  Diana Rhodes
Rhodes Law Firm, LLC
2015 Warren Ave.
Cheyenne, Wyoming  82001
(307) 634-4444
diana@drhodeslaw.com
Facsimile:  (307) 222-0280

REPRESENTING:    Dianna Bratberg, pending Personal Representative for the Estate of Vivian Olson

**This claim, alleging at a minimum, negligence, carelessness, and breach of contract, is submitted pursuant to the Wyoming Medical Review Panel Act of 2005 (Wyo. Stat. § 9-2-1513, et seq.).**

---

1 | *Notice of Claim Before Medical Review Panel: Vivian Olson*

PENGAD 800-631-6989

**EXHIBIT**
3

3/22/15       fall, ankle fractures, multiple bruises on bilateral arms, bruising left side of abdomen, scars on bilateral anterior knees
3/28/14       Stage 1 Pressure Ulcer
4/3/14        unresponsive, UTI

The injuries suffered included but were not limited to three fractures in ankle, multiple bruises on bilateral arms, bruising to left side of abdomen, scars on bilateral anterior knees, unresponsive episode, urinary tract infection, and others. Ms. Olsen was never able to be mobile again due to her injuries.

D.       The incidents in question occurred during Vivian Olson's residence at the KTCR which began on 3/19/14 and continued throughout her residency, including her readmission from Cheyenne Regional Medical Center through on or about 5/17/14.

The following conduct of KTCR is believed to constitute a malpractice (nursing home negligence) claim. From Vivian Olson's admission on 3/19/14 throughout her residency at KTCR in Cheyenne, Vivian Olson was a paying resident at KTCR pursuant to a contract between herself and KTCR. During her entire residence at KTCR, they were legally and contractually obligated to hire, supervise, and train competent and qualified nursing staff to provide her with competent care and reasonable living assistance in line with industry and community standards. Such obligation included, but was not limited to, KTCR's duty to provide Ms. Olson with a safe environment, to ensure proper health care, nutrition and protection from injury.

From at least 3/19/14, up to an including the date of her discharge, KTCR failed to meet its legal and contractual obligations to Vivian Olson. Such failures included, but were not limited to KTCR's failure to hire adequate numbers of appropriately trained and qualified staff, its failure to adequately train and supervise the staff, its failure to provide proper safety measures for its residents, failure to assess, failure to follow policies and procedures, all of which was required to ensure Vivian Olson's physical, emotional and health needs were being met. These failures, whether by negligence, carelessness, or otherwise, directly and proximately resulted in harm to Vivian Olson.

On 3/22/14, approximately three (3) days after admission, Ms. Olson was found on the floor beside her bed. She was assisted to bed. An assessment was allegedly performed by an LPN, rather than an RN as required. No injury was found. After assisting Ms. Olson to stand and go to the bathroom, and return to her bed, a CNA noticed Ms. Olson's ankle was externally rotated out. Ms. Olson was transported to CRMC where it was found she had fractures of three bones in the ankle. Ms. Olson underwent surgery for the fractures, but was never able to be mobile again. The negligent conduct of KTCR includes but is not limited to, that its staff failed to have an adequate care plan in place for Ms. Olson, failed to assess her in multiple factors, including fall risk, failed to have adequate staffing, failed to have adequate training, failed to have adequate nursing staffing, including failure to have an RN on duty to perform assessments.

E.  A list of all health care providers having contact with the claimant relevant to this claim is attached as **Attachment A.** As to the negligence of the Respondent, Claimant believes the only witnesses to her injuries are the healthcare personnel caring for Vivian Olson at KTCR, and at Cheyenne Regional Medical Center.

F.  A valid medical release form is attached as **Attachment B.**

G.  The proper venue for the hearing in this matter is in Laramie County, Cheyenne, Wyoming.

Consistent with the provisions of Chapter 2, Section 3 ("Amended Answer") of the Rules of the Medical Screening Panel, Claimant expressly reserves the right to amend this claim once as of right.

DATED: March 18, 2016.

Diana Rhodes, Esq., Attorney for Claimant

<u>Attachment A</u>: List of Health Care Providers

The healthcare providers who have had contact with Claimant relevant to this claim are:

1.    Kindred Transitional Care and Rehabilitation (KTCR)
      3128 Boxelder Dr, Cheyenne, WY 82001
      (307) 634-7901

      Possible witnesses: various nursing, CNA, pharmacy, physical therapy and other associated administrative and support personnel, whose identities are not presently available.

2.    Cheyenne Regional Medical Center
      214 E 23rd St, Cheyenne, WY 82001
      Phone: (307) 634-2273

3.    American Medical Response
      600 East Carlson St.
      Cheyenne, WY 82009

      Ambulance personnel whose identities are not presently available.

4.    Michael Herber, M.D.
      421 E. 17th St.
      Cheyenne, WY 82001
      307-633-3575

5.    Jean Basta, M.D.
      2301 House Ave.
      Cheyenne, WY 82001

6.    John Babson, M.D.
      Babson & Associates Primary Care, P.C.
      1331 Prairie Ave.
      Cheyenne, WY 82009
      (307) 632-0728

7.    Jared Gamet, M.D.
      % Cheyenne Regional Medical Center
      214 E. 23rd St.
      Cheyenne, WY 82001

**AUTHORIZATION TO DISCLOSE HEALTH INFORMATION**
**WYOMING MEDICAL REVIEW PANEL**
Pursuant to W.S. § 9-2-1519(a)

RE__Vivian Olson _____       ____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_____       _04_/_26_/_1927___
    Claimant Name                Social Security #               Date of Birth

I, _____Dianna Bratberg_____, hereby authorize the
         (Claimant or Personal Representative)

_____ to disclose health
         (Person or Organization Disclosing Information)

information from the records of the above named client to: the Wyoming Medical Review Panel, P.O. Box 1507, Casper, WY 82602.

The specific health information authorized for disclosure is: all medical records, x-rays, charts, notes, and other information related to the Claim before the Medical Review Panel.

The purpose of the disclosure is: For evaluation of the Claim before the Wyoming Medical Review Panel.

I understand that I have the right to revoke this authorization at any time, in writing, except to the extent that the organization or person which is to make the disclosure has already acted in reliance on it.

This authorization will expire on the following date, event, or condition: twelve (12) months after the authorization is signed or completion of the review before the Wyoming Medical Review Panel, whichever comes later.

You are hereby authorized and directed to furnish and release to the Wyoming Medical Review Panel all medical records and medical information which may be requested. The Wyoming Medical Review Panel is permitted to examine copy or reproduce any or all portions of my records. This release is intended to waive as to the Wyoming Medical Review Panel the physician-patient relationship privilege or any other right of confidentiality to information which I may assert in regard to my diagnosis, treatment, and prognosis while in your care. A copy of this authorization is as valid as the original thereof. I understand that once information is disclosed pursuant to this authorization, it is possible that said information will no longer be protected by applicable federal and /or state medical privacy law and may be re-disclosed by the Wyoming Medical Review Panel.

I understand that, once information is disclosed pursuant to this authorization, it may be disclosed to other individuals for the purpose of resolving all issues before the panel.

Pursuant to W.S. § 9-2-1519, nothing in this release may in any way be construed as waiving that privilege for any other purpose or in any other context, in or out of court.

By signing, I acknowledge I have been provided a copy of this signed authorization.

_Dianna Y. Bratberg_ / _3-18-16_
Signature of Claimant or Authorized Representative        Date

If signed by an Authorized Representative, a description of authority to serve: _POA_____
_____

STATE OF _WYOMING_____ )
                   ) SS
COUNTY OF _Laramie____ )

    The foregoing Medical Release Form was subscribed and sworn to before me this _18th_ day of
_March_____, 20_16_.

My Commission Expires:

STEPHANIE L. BAKER
Wyoming
Notary Public, County of Laramie
My Commission Expires
August 05, 2018

_Stephanie L. Baker_
Notary Public

## BEFORE THE MEDICAL REVIEW PANEL
## OF THE STATE OF WYOMING

IN THE MATTER OF THE CLAIM OF    )
VIVAN OLSON,    )
   )
       Claimant,    )
   )
v.    )    MRP 16-07
   )
KINDRED HEALTHCARE INC;    )
KINDRED HEALTHCARE    )
OPERATING, LLC; KINDRED    )
NURSING CENTERS WEST, LLC    )
KINDRED TRANSITIONAL CARE    )
AND REHABILITATION-CHEYENNE    )
   )
       Respondents.    )

June 27, 2016

## ORDER OF DISMISSAL

Notice of the claim of Vivian Olson was filed with the Medical Review Panel on March 18, 2016. Notice of the claim was served upon Kindred Nursing Centers West, LLC d/b/a Kindred Transitional Care and Rehabilitation-Cheyenne, Kindred Healthcare, Inc., Kindred Healthcare Operating, Inc. and Kindred Nursing Centers West, LLC on March 28, 2016. Answers were due from the Health Care Providers on May 27, 2016.

On April 25, 2016, the Medical Review Panel received a response from Health Care Providers stating that a Dispute Resolution Agreement was in place between the parties. Pursuant to W.S. § 9-2-1518(a), the panel does not review claims subject to a valid arbitration agreement.

The Director, pursuant to W.S. § 9-2-1518(a), finds that an Alternative Dispute Resolution agreement exists and that the Medical Review Panel does not have jurisdiction over this claim.

NOW, THEREFORE, IT IS ORDERD, that the Claimant has complied with the requirements of the Wyoming Medical Review Panel Action, W.S. § 9-2-1513 et. seq.; no further action or proceeding shall take place with this claim, and that the Claimant is authorized to immediately pursue the claim in a court of competent jurisdiction. Pursuant to W.S. § 9-2-1518(a), this dismissal constitutes the final decision of the Medical Review Panel, and the tolling of the applicable limitation period shall begin to run again thirty (30) days from the date of this decision.



**EXHIBIT**
**4**

DATED this 27th day of June, 2016.

Eric A. Easton, Director #5-2176
Medical Review Panel


### CERTIFICATE OF SERVICE


I, Eric A. Easton, do hereby certify that a true and correct copy of the foregoing ORDER OF DISMISSAL was served upon the parties by depositing a true and correct copy in the U.S. mail, postage prepaid this 27th day of June, 2016, to the following:

Diana Rhodes
Rhodes Law Firm
2015 Warren Avenue
Cheyenne, WY 82001

Christopher R. Jones
Gordon & Rees, LLP
555 Seventeenth Street, Suite 3400
Denver, CO 80202

Eric A. Easton, Director
Medical Review Panel